# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| KATHLEEN MILES | * | CIVIL ACTION NO.  10-1628 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

On May 29, 2008, Kathleen Miles protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments.  (Tr. 84-90).  She alleged disability as of March 1, 2008, because of carpal tunnel syndrome and anxiety.  (Tr. 102).  The claims were denied at the initial stage of the administrative process.  (Tr. 58-63).  Thereafter, Miles requested and received a September 10, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 25-57).  In a July 29, 2009, written decision, the ALJ determined that Miles was not disabled under the Act, finding at step four of the sequential evaluation process that she was able to return to past relevant work as a day care teacher and teacher's aide.  (Tr. 11-24).  The ALJ further found, because it was not clear whether Miles performed her past relevant

work at the substantially gainful level, that she also could make an adjustment to other work that exists in substantial numbers in the national economy at step five.  *Id*.

Miles appealed the adverse decision to the Appeals Council.  On August 21, 2010, however, the Appeals Council denied Miles' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On October 25, 2010, Miles sought review before this court.  She alleges the following errors:

(1)    the ALJ erred by failing to find that plaintiff met Listing 12.06 at step three of the sequential evaluation process;

(2)    the ALJ's mental residual functional capacity assessment is not supported by substantial evidence; and

(3)    the ALJ's determination at steps four and/or five of the sequential evaluation process is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial

2

evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

3

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## <u>Analysis</u>

### I.   <u>Steps One and Two</u>

The ALJ determined at Step One of the sequential evaluation process that Miles did not engage in substantial gainful activity during the relevant period.  (Tr. 16).  At Step Two, she found that Miles suffers severe impairments of carpal tunnel syndrome and an anxiety disorder. *Id*.

### II.   <u>Step Three</u>

The ALJ concluded at step three of the sequential evaluation process that Miles'

impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 17-19).  In this regard, the ALJ specifically determined that Miles' mental impairment satisfied neither the "paragraph B" criteria, nor the "paragraph C" criteria for listing 12.06, Anxiety Related Disorder. (Tr. 18-19).  As required by the regulations, the ALJ applied the psychiatric review technique to rate the degree of limitation in four broad areas of functioning:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 1520a(c), 920a(c).  She concluded that Miles' mental impairment imposed no more than moderate limitations of functioning in the first three areas, with no episodes of decompensation. *Id*.

The ALJ's step three determination, however, relied significantly upon the June 27, 2008, findings of consultative psychologist, Thomas Staats, Ph.D., and tracked the psychiatric review technique form issued by non-examining agency psychologist Tom Ray, Ph.D., which, in turn, also was premised upon Staats' findings.  *See* Tr. 18-19, 205-206, 217-230.  In fact, the ALJ duly recounted that, according to Staats, Miles interacted "poorly" on a 1:1 basis.  (Tr. 18). Furthermore, although Staats indicated that Miles' concentration was suspiciously "poor," he found that her persistence was "poor," but without the "suspicious" qualifier.  (Tr. 205-208).

Plaintiff contends that she actually meets listing 12.06 because Dr. Staats typically equates "poor" to a "marked" impairment of functioning as contemplated by the regulations.  In support of her argument, she submitted to the Appeals Council a copy of an August 31, 2007, facsimile that Staats sent to plaintiff's counsel in response to inquiry by counsel asking how Staats' word choice translated into agency terms such as "moderate," "marked," and "extreme." *See* Tr. 138-139.  Staats' explanatory statement constitutes part of the instant record – provided

that it is new, material and related to the period before the ALJ's decision.  *See Higginbotham v. Barnhart*  405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).  There is little question that the additional evidence meets the applicable criteria.  Dr. Staats' facsimile is new because it, for the first time (in this case), equates terms that he employed in his mental capacity evaluation report with terms commonly used by the Commissioner.  The facsimile is related to the period at issue because it explains the findings of the evaluation administered by Staats during the relevant period.  Finally, the additional evidence is material because Staats' report, when read together with his translation key, combine to undermine the bases for the non-examining psychologist's opinion and for the ALJ's step three determination.  The Appeals Council, however, provided no specific rationale for discounting this new evidence.  (Tr. 1-2).  Moreover, the ALJ may well have reached a different result at step three, had she been aware of Staats' definition of "poor."[1]  Accordingly, remand is required.

**III.    Residual Functional Capacity**

The ALJ next determined that Miles retains the residual functional capacity to perform light work, except that she can only frequently handle (as opposed to constantly) and occasionally finger.  (Tr. 19).[2]  She also experiences moderate limitations in understanding,

---

[1]  The court notes that on August 29, 2008, Miles' treating physician, Dr. Hudson completed a Mental Capacities Evaluation, wherein he indicated that her anxiety attacks imposed no more than moderate limitations in the same four areas of functioning contemplated by the psychiatric review technique and the "paragraph B" criteria of the mental impairments listings. *See* Tr. 246.  However, in her residual functional capacity assessment, the ALJ ultimately assigned "little weight" to Dr. Hudson's opinion.  (Tr. 21).

[2]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves

remembering, and carrying out detailed instructions, maintaining attention and concentration, and interacting with the general public.  *Id.*

Plaintiff does not challenge the ALJ's finding regarding her physical residual functional capacity.[3]  Rather, she argues that the ALJ failed to properly assess the effects of her mental impairment, at least in part, because the ALJ did not contemplate the restrictive definition of "poor," intended by Dr. Staats.

The court agrees, and further finds that the ALJ's mental residual functional capacity assessment is not supported by substantial evidence.  Two of plaintiff's treating physicians, Drs. Hudson and Lococo issued medical source statements regarding the limitations caused by her mental impairments.  *See* Tr. 246, 250.  Although Dr. Hudson found no more than moderate mental limitations in the four areas of functioning contemplated by the psychiatric review technique, the ALJ ultimately assigned "little weight" to Dr. Hudson's opinion.  (Tr. 21). Furthermore, Dr. Lococo indicated that Miles' panic disorder caused marked limitations in maintaining concentration, persistence, or pace, and marked episodes of decompensation within a 12 month period, each of which lasting for two weeks.  (Tr. 250).  While the ALJ discounted

_____

> sitting most of the time with some pushing and pulling of arm or
> leg controls.  To be considered capable of performing a full or wide
> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3]  The ALJ's physical residual functional capacity assessment is further supported by a post-decision, functional capacity evaluation administered by physical therapist, Steve Allison, wherein he found that Miles could perform light to medium work.  (Tr. 262-293).  Allison added that Miles' pain complaints and perceived level of disability were generally not credible and disproportionate to the objective medical evidence.  *Id.*

Lococo's opinion regarding the episodes of decompensation, she did not address his opinion as to Miles' concentration, persistence, or pace, and, in the end, assigned "moderate weight" to Lococo's opinion.  (Tr. 22).

The record also contains a July 21, 2008, mental residual functional capacity assessment form completed by non-examining agency psychologist, Tom Ray, Ph.D.   (Tr. 209-216).  He indicated that Miles was moderately limited in her ability to:  maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal work-day and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace; and to interact appropriately with the general public.  *Id.*

The ALJ acknowledged Dr. Ray's assessment, and remarked that it was generally well supported and not wholly inconsistent with her own findings.  (Tr. 22).  Nonetheless, she determined that the weight of the evidence established that Miles' functioning was not as limited as indicated by Dr. Ray.  *Id*.  The ALJ then proceeded, on her own, to assign limitations stemming from plaintiff's mental impairment.  However, the ALJ cited no specific evidence to support her assessment of the effects of plaintiff's mental impairment.  She also did not adopt the limitations recognized by plaintiff's treating physicians or the non-examining agency psychologist.  The consultative psychologist, Dr. Staats, did not complete a medical source statement regarding the effects of plaintiff's impairments.  Furthermore, as it now turns out, Staats believed Miles to be more seriously impaired than the ALJ and Dr. Ray appreciated.  *See* discussion, *supra*.

Thus, in the end, the ALJ autonomously derived the effects of plaintiff's mental

8

impairment for purposes of the residual functional capacity assessment.  However, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[4]

## III.   Steps Four through Five and Remand

Because the foundations for the Commissioner's step four and alternative step five determinations were premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence.[5]

---

[4]  Plaintiff's testimony also does not support the ALJ's residual functional capacity assessment.  Although Miles stated that she cared for her six year old child and handled various household duties, that does not establish she is able to perform similar duties in a competitive, more stressful work environment.  Furthermore, Miles qualified her daily activities by explaining that she could perform those tasks so long as she was not experiencing an anxiety attack.  *See* Tr. 117-118.  The problem, however, is that she experiences as many as three such attacks per day. (Tr. 42-43).

[5]  Accordingly, the court need not address plaintiff's alternative argument that the ALJ's definition of "moderate" was unduly benign.  Plaintiff's counsel may avert this issue in the future by exercising his right to subpoena or propound written interrogatories to a psychologist or physician who uses that term to ensure that he or she understands the word in the same way as it

9

Plaintiff urges the court to enter a judgment awarding benefits.  The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*,  750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  At a minimum, the severity and effects of plaintiff's mental impairment(s) remain indeterminate.

<u>Conclusion</u>

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

---

is commonly defined by the ALJ(s).  *See Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990); POMS DI 29501.025 (authorizing written interrogatories).  Alternatively, counsel could ask all opining psychologists (treating, consultative, or agency) to complete a Medical Source Statement of Ability to do Work-Related Activities (Mental), Form HA-1152-U3 (06-2006), which contains the definition of "moderate" used by the ALJs.  Again, this will ensure that everyone is working from the same definition(s).

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 5th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE